UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARTONIQUE A. OBO M.Q., § § Plaintiff, § § v. § § COMMISSIONER OF SOCIAL SECURITY, § § Defendant. § | Case # 1:21-cv-849-DB MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Plaintiff Martonique A. ("Plaintiff") brings this action on behalf of M.Q., a child under the age of eighteen, pursuant to Title XVI of the Social Security Act (the "Act"). Plaintiff seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying M.Q.'s claim for supplemental security income ("SSI"). *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the case is before the undersigned in accordance with a standing order (*see* ECF No. 13).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 8, 10. Plaintiff also filed a reply. *See* ECF No. 12. For the reasons set forth below, Plaintiff's motion (ECF No. 8) is **DENIED**, and the Commissioner's motion (ECF No. 10) is **GRANTED**.

## BACKGROUND

On November 15, 2018, Plaintiff protectively filed an application for child's SSI benefits on behalf of her minor son, M.Q., alleging disability beginning January 1, 2012 ((the disability onset date), due to a learning disability and behavioral problems. Transcript ("Tr.") 10, 58. The application was initially denied on March 7, 2091, and upon reconsideration on May 9, 2019, after which Plaintiff requested an administrative hearing. Tr. 10.

Administrative Law Judge William Weir ("the ALJ") conducted telephonic hearings[1] on July 17, 2020 and November 2, 2020. Tr. 28, 48. Plaintiff was represented at both hearings by, Nicholas DiVirgilio, an attorney. Tr. 10. M.Q. did not appear at the July 17, 2020 hearing, which was ultimately postponed at the request of Mr. DiVirgilio. Tr. 52. Plaintiff and M.Q. both appeared and testified at the November 2, 2020 hearing. Tr. 28-47.

The ALJ issued an unfavorable decision on November 30, 2020, finding M.Q. not disabled. Tr. 10-16. On May 27, 2021, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's November 30, 2020 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

---

[1] Due to the extraordinary circumstance presented by the Coronavirus Disease 2019 ("COVID-19") pandemic, all participants attended the hearing by telephone. Tr. 10.

## II. The Sequential Evaluation Process

Individuals under eighteen years old are considered disabled when the individual "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i). In evaluating disability claims in children, the Commissioner is required to use the three-step process promulgated in 20 C.F.R. § 416.924. The first step requires the ALJ to determine whether the child is engaged in "substantial gainful activity." *See* 20 C.F.R. § 416.924(a). The second step requires the ALJ to determine whether the child has any severe impairments, defined as anything that causes "more than minimal functional limitations." *Id*. Finally, the ALJ determines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of a listed impairment. *Id*. If the ALJ finds that the child's impairment or combination of impairments meets or equals a listing, the child is then considered disabled. 20 C.F.R. §§ 416.924(d)(1).

In determining whether the child's impairment or combination of impairments meets or medically equals a listing, the ALJ must assess the child's functioning in six domains:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for yourself; and

6. Health and physical well-being.

20 C.F.R. § 416.926a(b)(1). The child is classified as disabled if the child has a "marked" limitation in any two domains of functioning or an "extreme" limitation in any one domain. 20 C.F.R. §§ 416.926a(d). A "marked" limitation exists when the impairment or cumulative effect of the impairments "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is an impairment which "interferes very seriously" with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). If the child has an impairment that meets, and medically or functionally equals the listings, and the impairment meets the Act's duration requirement, the ALJ will find the child disabled. 20 C.F.R. § 416.924(d).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed M.Q.'s claim for benefits under the process described above and made the following findings in his November 30, 2020 decision:

1. The claimant was born on January 13, 2007. Therefore, he was a school-age child on November 14, 2018, the date application was filed, and is currently an adolescent (20 CFR 416.926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity since November 14, 2018, the application date (20 CFR 416.924(b) and 416.971 *et seq*.).

3. The claimant has attention deficit hyperactivity disorder ("ADHD)", speech/language deficits; and auditory processing disorder, each of which constitutes a severe impairment (20 CFR 416.924(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

6. The claimant has not been disabled, as defined in the Social Security Act, since November 14, 2018, the date the application was filed (20 CFR 416.924(a)).

Tr. 10-16.

Accordingly, the ALJ determined that, based on the application for Supplemental Security Income protectively filed on November 14, 2018, M.Q. is not disabled under section 1614(a)(3)(C) of the Social Security Act. Tr. 16.

## **ANALYSIS**

Plaintiff asserts two points of error. Plaintiff first argues that the ALJ's evaluation of the domains was not supported by substantial evidence because the ALJ did not explain the basis for his findings. *See* ECF No. 7-1 at 7-10. Plaintiff's second point argues that the ALJ failed to reconcile the teacher questionnaire he found "somewhat persuasive" with his finding of less than marked limitation in the domain of attending and completing tasks. *See id*. at 10-24. Plaintiff complains that the ALJ found less than a marked limitation in the domain of attending and completing tasks while the teacher's opinion noted four "serious problem[s]" and two "obvious problems" in this domain. *See id*. at 10-14. Accordingly, argues Plaintiff, the ALJ should have found at least marked limitations in the domain of attending and completing tasks. *See id*.

The Commissioner argues in response that substantial evidence supports the ALJ's functional equivalence findings, including in the domain of attending and completing tasks. *See* ECF No. 10-1 at 14-17. With respect to the teacher questionnaire, the Commissioner argues that Plaintiff has not shown that the teacher's responses demonstrate that M.Q. was more restricted than the ALJ found in the domain of attending and completing tasks, given that M.Q's teacher assessed no more than "slight" problems in seven out of thirteen areas. *See id*. at 17-20.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The

Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record and the ALJ's decision, the Court finds that the ALJ thoroughly considered all the evidence in the record in evaluating M.Q.'s functioning, including the assessments of two state agency consultants, the evaluations of two consultative examiners, and a teacher's questionnaire, along with M.Q.'s treatment and educational records, and substantial evidence supports the ALJ's decision that M.Q.'s limitations did not have a marked limitation in in any two domains of functioning or an "extreme" limitation in any one domain. Tr. 13-16; *see* 20 C.F.R. §§ 416.924, 416.926a. Accordingly, the Court finds no error.

As noted above, the ALJ found that M.Q. had less than a marked limitation in the domains of acquiring and using information and attending and completing tasks; a marked limitation in the domain of interacting and relating with others; and no limitation in the domains of moving about or manipulating objects, caring for himself, and health and physical well-being. Tr. 13. Plaintiff argues that the ALJ merely summarized portions of the record without explaining the basis for the findings in his decision. *See* ECF No. 8-1 at 7-10. Plaintiff further argues that the ALJ should have found at least marked limitations in the domain of attending and completing tasks but does not meaningfully challenge the ALJ's findings in the other domains.[2] *See id*. As discussed further below, the Court finds that the ALJ's analysis was more than sufficient.

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new

---

[2] Accordingly, the Court declines to address the ALJ's findings in the remaining domains any more than minimally necessary in this opinion. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal); *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). M.Q.'s application was filed on November 15, 2018, and therefore, the 2017 regulations are applicable to his claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings. The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency. *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Rather, the ALJ focuses on the persuasiveness of the medical opinion(s) or prior administrative medical finding(s) using the following five factors: (1) Supportability; (2) Consistency; (3) Relationship with the claimant (which includes: (i) Length of the treatment relationship; (ii) Frequency of examinations; (iii)

Purpose of the treatment relationship; (iv) Extent of the treatment relationship; and (v) Examining relationship); (4) Specialization; and (5) Other factors. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). When articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458,

466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

When assessing a child's ability in each of the six domains, an ALJ considers evidence from all settings, including school records such as grades and aptitude and achievement test scores, evidence from medical and non-medical sources, and evidence from the child himself, in order to take into account "the whole child." *See* Social Security Ruling ("SSR") 09-1p, 2009 WL 396031; 09-3p, 2009 WL 396025, at *5. It is Plaintiff's burden to submit evidence to corroborate her allegations and to demonstrate disability. *See* 20 C.F.R. § 416.912(a); *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). Here, the ALJ followed these procedures and conducted a thorough discussion of the evidence to find that M.Q. did not satisfy the criteria for functional equivalence to a Listing, in spite of his ADHD, speech/language deficits, and auditory processing disorder. Tr. 13.

The domain of attending and completing tasks considers how well a child is able to focus and maintain attention, and how well he can begin, carry through, and finish activities, including the pace at which the child performs activities and the ease with which she can change them. 20 C.F.R. § 416.926a(h). "Attention" involves regulating levels of alertness and initiating and maintain concentration, as well as the ability to filter out distractions and to remain focused on an activity or task at a consistent level of performance. 20 C.F.R. § 416.926a(h)(1). School-age children should be able to focus their attention on a variety of situations in order to follow directions, remember and organize school materials, and complete homework and classroom assignments. 20 C.F.R. § 416.926a(h)(iv). They should also be able to change activities or routines

without distracting themselves or others, stay on task and in place when appropriate, sustain attention well enough to play group sports, read by themselves, and complete chores, and complete transition work like getting ready to change tasks. *Id*. Adolescents should be able to pay attention to longer presentations and discussions, maintain concentration while reading textbooks, and independently plan and complete long-range academic projects. 20 C.F.R. § 416.926a(h)(v).

As previously noted, Plaintiff argues that the ALJ's analysis of the functional domains lacked sufficient articulation. *See* ECF No. 8-1 at 7-10. However, "[a]n ALJ does not have to state on the record every reason justifying a decision," nor is an ALJ 'required to discuss every piece of evidence submitted.'" *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (citing *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks omitted). All that is ultimately required of the ALJ's decision is sufficient analysis to permit meaningful judicial review of the ALJ's rationale in relation to the record evidence, which the ALJ provided here. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013); *see also Shatraw ex rel. K.C.Y. v. Astrue*, No. 7:11-CV-13 GLS, 2012 WL 589667, at *3-4 (N.D.N.Y. Feb. 22, 2012) (even where "the ALJ could undoubtedly have articulated his reasoning more thoroughly," substantial evidence nevertheless supported the ALJ's functional equivalence findings).

Here, the ALJ provided explanations for how the evidence of record supported his finding that M.Q. was not disabled. *See* 20 C.F.R. § 416.926a(d) (unless a claimant has at least two "marked" or one "extreme" limitation in the six domains of functioning, she will be found "not disabled"). Specifically, the ALJ's decision is supported by the prior administrative medical findings of two state agency consultants. Tr. 61-62, 73-75. First, pediatric specialist B. Stouter, M.D. ("Dr. Stouter"), reviewed the then-available evidence of record on March 6, 2019, and found

10

that M.Q. had less than marked limitations in attending and completing tasks. Tr. 61-62. Additionally, Dr. Stouter found less than marked limitations in acquiring and using information and interacting and relating with others, and no limitations in moving about and manipulating objects, caring for himself, and health and physical well-being. Tr. 61-62. Thus, not only did Dr. Stouter's assessment support the ALJ's functional equivalence finding, including in the domain of attending and completing tasks, it was also less restrictive than the ALJ's finding in interacting and relating with others. Tr. 13, 61-62. *See Lesanti v. Comm' r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) ("[R]emand is generally not warranted where the ALJ's RFC finding is more restrictive than the limitations set forth in the medical opinions of record.").

Pediatric specialist I. Sinha, M.D. ("Dr. Sinha"), also reviewed the then-available evidence of record on May 8, 2019, and found that M.Q. had less than marked limitations in attending and completing tasks. Tr. 74. Dr. Sinha also found marked limitations in interacting and relating with others, less than marked limitations in acquiring and using information, and no limitations in moving about and manipulating objects, caring for himself, and health and physical well-being. Tr. 73-75. While the ALJ's decision did not explicitly discuss the state agency consultants' findings in his decision, the ALJ discussed Dr. Sinha's assessment at the November 2020 hearing (Tr. 32-33), and the ALJ's functional equivalence findings tracked Dr. Sinha's assessment, including in attending and completing tasks, and therefore supported the ALJ's decision. Tr. 13, 73-75. *See* 20 C.F.R. § 416.913a(b)(1) (State agency medical consultants are highly qualified and experts in Social Security disability evaluation.); *Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (the opinions of non-examining sources can constitute substantial evidence when supported by the evidence in the record) (internal citations omitted).

The ALJ also properly considered the January 29, 2019 consultative examination of speech-language pathologist Amy Atwater, MS, CCC-SLP. ("Ms. Atwater") (Tr. 278-81), which Drs. Stouter and Sinha also considered in their reviews (Tr. 58-59, 70-71), and which the ALJ found persuasive. Tr. 15-16. *See Grega v. Saul*, 816 F. App'x 580, 582–83 (2d Cir. 2020) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (the opinion of a consultative examiner may constitute substantial evidence in support of an ALJ's decision)). As the ALJ noted, Ms. Atwater reported that M.Q. spoke English in the home but was delayed in saying his first words and had a history significant for a diagnosis of ADHD. Tr. 15, 278. Ms. Atwater also noted that, according to Plaintiff, M.Q. had never had any type of therapy services. *Id*. M.Q. was in the sixth grade in a regular classroom and did not have an IEP, but Plaintiff reported that M.Q.'s academic performance was poor and that he may be evaluated for special education services. *Id*.

Ms. Atwater conducted language testing and opined that M.Q. had a severe expressive language delay, but only a mild receptive language delay, and his articulation skills were within functional limitations. Tr. 15, 279-80. Testing further showed that M.Q. was able to follow simple verbal directions, although multi-step directions were occasionally a challenge without prompting or repetition. Tr. 280. *See* 20 C.F.R. § 416.926a(h)(2)(iv) (ability to follow directions). As the ALJ also pointed out, Ms. Atwater noted that M.Q. participated in many age-appropriate activities, including watching TV, listening to music, drawing, doing homework, and playing with siblings, peers, and by himself. Tr. 15, 278; *see also* 20 C.F.R. § 416.926a(h)(2)(iv) (ability to focus attention in a variety of situations and participate in groups); 20 C.F.R. § 416.926a(h)(2)(v) (ability to complete school assignments).

Ms. Atwater further stated that M.Q.'s impairments might adversely affect his academic performance, social functioning, communication at an age-appropriate level, and ability to follow

directions and instructions. Tr. 15, 280. Ms. Atwater recommended that M.Q. participate in speech and language services, but also stated that his prognosis for improvement was good with appropriate intervention. *Id*. Accordingly, Ms. Atwater's report supported the ALJ's functional equivalence findings, including in attending and completing tasks, and the ALJ properly found her opinion persuasive because it was supported by objective test findings and was consistent with the medical evidence of record. Tr. 16; *see also* 20 C.F.R. § 416.920c(b)(2) (supportability and consistency are the two most important factors in determining the persuasiveness of a medical opinion or prior administrative medical finding).

The ALJ also considered and found "somewhat persuasive" the February 25, 2019 teacher questionnaire completed by M.Q.'s sixth grade teacher (Tr. 207-14)[3], which Drs. Stouter and Sinha also considered in their reviews (Tr. 58, 70). Tr. 14, 16. As the ALJ noted, M.Q.'s teacher reported that he was in a classroom setting with a student-teacher ratio of 28-to-1. Tr. 14, 207. As the ALJ also noted, M.Q.'s teacher assessed no "very serious" problems in any of the activities, with several domains having no "serious" problems at all. Tr. 14, 208-12. Even in domains where M.Q.'s teacher indicated some "serious" problems with specific activities, the teacher still primarily indicated that problems ranged from slight to less than serious. Tr. 208-12. Indeed, out of 13 activities in interacting and relating to others, the teacher only noted "serious" problems with three activities. Tr. 210. Likewise, the teacher noted "serious" problems in only four out of 13 activities in attending and completing tasks. Tr. 209. In finding the questionnaire "somewhat persuasive," the ALJ noted that the teacher had the advantage of interacting with M.Q. daily, and the opinion and findings were supported by the evidence of record Tr. 16.

---

[3] The Court notes that the questionnaire is from PS 53 Community School but was not signed and does not identify the teacher by name. Tr. 207-14.

Plaintiff contends that the ALJ properly found marked limitations in interacting and relating with others, based the teacher's assessment of some "serious" problems in that domain, but takes issue with the ALJ's finding of less than marked limitations in attending and completing tasks, based on the teacher's assessment of some "serious" and "obvious" problems in that domain. *See* ECF No. 8-1 at10-15. However, the ALJ found the teacher's questionnaire only somewhat persuasive, indicating that the ALJ did not accept the teacher's responses wholesale, as he is permitted to do. Tr. 16. *See Schillo v. Kijakazi*, 31 F.4th 64, 77-78 (2d Cir. Apr. 6, 2022) (affirming where the ALJ declined to adopt the limitations set forth in three treating source opinions, and the RFC finding did not match any opinion in the record). Although the ALJ noted that the teacher did not sign the form (Tr. 16), this does not appear to have impacted the ALJ's persuasive analysis, as Plaintiff argues. *See* ECF No. 8-1 at 11-12. Ultimately, an ALJ is tasked with weighing the evidence in the record and reaching an RFC finding based on the record. *See Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (citing *Matta*, 508 F. App'x at 56).

In any case, Plaintiff has not shown that the teacher's responses demonstrated that M.Q. was more restricted in the domain of attending and completing tasks than found by the ALJ, as M.Q.'s teacher assessed no more than "slight" problems in seven out of 13 areas. Tr. 209. *See Sally M. o/b/o C.B. v. Comm'r of Soc. Sec.*, No. 20-CV-6210-MJR, 2021 WL 1783007, at *3 (W.D.N.Y. May 5, 2021) ("assessments of serious and very serious problems in a domain are not necessarily inconsistent with an ALJ's conclusion that the child's limitations were less than marked." (internal quotations omitted)); *White o/b/o T.R.W. v. Berryhill*, No. 17-CV-6367, 2019 WL 1367382, at *5 (W.D.N.Y. Mar. 26, 2019) (rejecting plaintiff's argument that "serious" or "very serious" problems equate to "marked" or "extreme" limitations, and listing other cases in support of the same proposition); *see also Shatraw ex rel. K.C.Y.*, 2012 WL 589667, at *3-4 (rejecting claimant's

argument that the ALJ failed to adequately explain why teachers' assessments of "serious" and "very serious" problems in the domain of self-care did not result in a finding of marked or extreme limitation).

The ALJ also considered the intelligence and psychiatric evaluation conducted by consultative examiner Janine Ippolito, Psy.D. ("Dr. Ippolito), on January 29, 2019 (Tr. 283-90), which Drs. Stouter and Sinha also considered in their reviews (Tr. 58-59, 70-71). Tr. 15. Dr. Ippolito noted that M.Q. was in regular education and denied receiving any speech therapy, occupational therapy, physical therapy, or counseling services at school. Tr. 15, 283, 287. Upon examination, M.Q. was cooperative, with appropriate eye contact and normal motor behavior, and he was on medication for ADHD at the time of testing. Tr. 15, 284, 288. Dr. Ippolito administered a standardized intelligence measure (WISC-V), which showed a full-scale IQ score in the borderline range of ability; however, Dr. Ippolito advised caution in interpreting the results due to variability among the five indices (ranging from 70 in verbal comprehension to 94 in working memory). Tr. 15, 284-85. Dr. Ippolito further observed that M.Q.'s attention and concentration were mildly impaired due to distractibility. Tr. 15, 288. Although Dr. Ippolito noted that M.Q.'s affect was "restricted," she also noted that he reported "feeling 'good' today," and he was able to perform simple calculations and counting tasks. *Id*. Although Plaintiff reported that M.Q. "had been resistant to bathing in the past," and he "bickered" with his brother over performing chores, she also indicated he was currently able to dress, bathe, and groom himself in an age-appropriate manner, and he liked to play football and video games. Tr. 15, 285, 288-89.

Dr. Ippolito opined that M.Q. had mild limitations in attending to, following, and understanding age-appropriate directions, sustaining concentration and completing age-appropriate tasks, and learning in accordance to cognitive functioning. Tr. 15, 285, 289. Dr.

Ippolito also opined that M.Q. had no limitations in adequately maintaining appropriate socially appropriate behavior, responding appropriately to changes in the environment, asking questions and requesting assistance in an age-appropriate manner, being aware of dangers and taking needed precautions, and interacting adequately with peers and adults. *Id*. Dr. Ippolito further stated that M.Q. had a primary diagnosis of ADHD, "mild, stable with medication."

The ALJ reasonably found Dr. Ippolito's opinion "not persuasive," because her finding of only mild ADHD was "not supported by the evidence of record, in particular school records that show [M.Q.'s] impairment causes more than mild limitations." Tr. 16. *See Lesanti*, 436 F. Supp. at 649 ("[R]emand is generally not warranted where the ALJ's RFC finding is more restrictive than the limitations set forth in the medical opinions of record."). Notably, the ALJ accounted for M.Q.'s social and behavioral difficulties by finding marked limitations in interacting and relating with others. Tr. 13.

Although the ALJ acknowledged that school records and pediatric treatment notes showed behavioral and academic issues, especially during periods when M.Q. was not taking medication, these records nevertheless provided further support for the ALJ's finding of marked limitations in interacting and relating with others, but less than marked limitations in attending and completing tasks. Tr. 15-16, For example, the ALJ acknowledged behavior reports from 2014 to 2018 showing some behavioral problems and issues with completing assignments when M.Q. was in elementary school. Tr. 16, 496-98. The ALJ also acknowledged that in December 2018, Plaintiff reported that M.Q. had issues with sitting still and paying attention at home; he was behind in learning and did not do well on tests; but he did "okay" on homework and had advanced from grade to grade. Tr. 15, 319.

However, the ALJ also discussed treatment notes from January 2019 showing that M.Q. was "doing much better academically after being placed on a low dose of Adderall," with no changes in his sleep or appetite. Tr. 15, 275, 439; *see also* 20 C.F.R. § 416.926a(h)(2)(v) (ability to complete school assignments). The treatment record from that date also noted that M.Q.'s "meds seem[ed] to wear off in the afternoon," and his morning dose was subsequently increased. Tr. 15, 275-76. Furthermore, as the ALJ noted, Plaintiff reported in June 2019 that M.Q. had been out of medications for a month, and although his grades were poor, he continued to be in regular classes. Tr. 16, 375. Although behavioral problems were noted in November 2019, Plaintiff reported in December 2019 that M.Q. was improving; he was "not on meds," and Plaintiff did not want a refill. Tr. 16, 383, 496. The ALJ further acknowledged that M.Q. had attended summer school in 2020 due to failing grades, but he was eating and sleeping well, and Plaintiff reported no behavior concerns. Tr. 16, 509. In September 2020, M.Q. was placed on a new dose of Adderall/dextroamphetamine-amphetamine, with a goal of improved focus, concentration, socialization and safety. Tr. 16, Tr. 511.

The ALJ also summarized and considered the November 2020 hearing testimony of Plaintiff and M.Q., which also supported the ALJ's finding that, despite behavioral and academic issues, M.Q. generally improved with medication. Tr. 14, 30-31. For example, as the ALJ noted, Plaintiff testified that M.Q. had poor grades; did not pay attention or ask for help; was put in smaller classes with fewer students; and had behavioral issues at school and at home. Tr. 14, 34-35. The ALJ also noted M.Q.'s testimony that he had problems in school despite asking for help, and he did not hang out with friends or go to movies. Tr. 14, 43-45. M.Q. also admitted having an attendance problem in school but stated he did not know why he was absent or tardy from school. *Id*. Nonetheless, as the ALJ pointed out, Plaintiff admitted that M.Q. had improvement in

concentration on his Adderall medication. Tr. 14, 35-37. She testified that M.Q.'s medication helped his school performance "a little" but also stated that M.Q. was "a lot more focused" when he was on his medication and that his dosage was recently increased. Tr. 36; *see, e.g.*, *Sally M. o/b/o C.B.*, 2021 WL 1783007, at *4 ("C.B.'s conditions generally responded positively to treatment that did not require any inpatient or intensive mental health treatment and allowed her to remain in a regular general education classroom with grades sufficient to advance to the next grade level").

Based on the foregoing, substantial evidence of record supports the ALJ's finding, and while Plaintiff may disagree with the ALJ's conclusions in this domain, her mere disagreement with the ALJ's findings does not warrant remand. Even if the evidence demonstrated some limitation in this domain, that would not be enough, as Plaintiff must produce evidence showing marked limitation in at least two functional domains. *See* 20 C.F.R. §§ 416.926a(d); *see also Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). The question is not whether there is evidence to support disability; it is whether there is "more than a scintilla" of evidence supporting the ALJ's decision. *Moran*, 569 F.3d at 112. As discussed above, there is such evidence.

In summary, the ALJ thoroughly reviewed the entire record, including opinion evidence, treatment records, educational records, and non-medical evidence in determining that M.Q. had less than a marked limitation in attending and completing tasks. Tr. 13. The ALJ's finding is supported by the assessments of Drs. Stouter and Sinha, the examination reports of Ms. Atwater and Dr. Ippolito, and the questionnaire responses of M.Q.'s teacher, as well as school records, pediatric treatment notes, and testimony showing that M.Q.'s symptoms improved with medication and that, despite difficulties with schoolwork and behavior, M.Q. had not received an IEP and was advanced from grade to grade. Tr. 15, 319.

Thus, Plaintiff fails to meet her burden to show that M.Q.'s speech/language deficits, auditory processing disorder, and ADHD caused him to have marked or higher limitations in attending and completing tasks, or in any domain other than interacting and relating with others. *See* 20 C.F.R. § 416.912(a) (it is Plaintiff's burden to prove disability); *Brault*, 683 F.3d at 448 (It is not enough for the plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do. As discussed above, Plaintiff's mere disagreement with the ALJ's findings does not warrant remand.

The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448 (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). As previously noted, the question is not whether there is evidence to support disability; it is whether there is "more than a scintilla" of evidence supporting the ALJ's decision. *Moran v*, 569 F.3d at 112. As explained above, there is such evidence here. The Court accordingly finds no error in the ALJ's determination that M.Q. is not disabled.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 10) is **GRANTED**. Plaintiff's

Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

    **IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE